ESTATE OF VIOLA E. BRAY, DECEASED, BERTHA BRAY RICHARDS, GYLES
E. MERRILL AND HARRY G. GAULT, EXECUTRIX AND CO-EXECUTORS,
PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2757–64, 2758–64.   Filed August 10, 1966.

*Harry G. Gault*, for the petitioners.
*Charles R. Abbott*, for the respondent.

OPINION

MULRONEY, *Judge:* Respondent determined deficiencies in the estate
tax (docket No. 2757–64) and the 1961 income tax (docket No. 2758–
64) of the Estate of Viola E. Bray, in the amounts of $175,294.07 and
$19,434, respectively.   All of the facts have been stipulated and are
found accordingly.

The dockets were consolidated for trial and opinion and all of the
issues have been resolved and disposed of by the parties with the excep-
tion of one issue with respect to whether an item of selling expenses of
stock can be used as both an offset against the sales price of the stock
in computing estate income tax and as an administration expense
deduction in the estate tax return.

Viola E. Bray died in the city of Flint, Mich., on May 24, 1961.   Her
estate is in the process of administration in the Probate Court for
Genesee County, Mich., and the duly qualified and acting fiduciaries are
Bertha Bray Richards, coexecutrix, Gyles E. Merrill, coexecutor, and
Harry G. Gault, coexecutor, all of the city of Flint, Mich.

During the period June 9, 1961, through June 23, 1961, it became
necessary to sell estate assets for the purpose of obtaining funds with
which to pay administration expenses and taxes.   As a result of such
necessity, the fiduciaries of said estate caused to be sold 50,000 shares of
General Motors Corp. 1⅔ par value common stock, comprising a part
of the assets of the Viola E. Bray Estate.   In connection with the sale

of such stock, said fiduciaries incurred and paid the following fees and expenses in the total amount of $23,832.94.

| | |
|---|---:|
| Commissions | $20, 877. 17 |
| S.E.C. fee | 46. 01 |
| State tax | 2, 000. 00 |
| Federal tax | 909. 76 |
| Total | 23, 832. 94 |

In Schedule D of the fiduciary income tax return for 1961, the sales expense amount of $23,832.94 was claimed as an expense of sale of stock and used as an offset against the selling price thereby reducing the amount of capital gain subject to income tax.

In Schedule J of the Federal estate tax return filed for the Estate of Viola E. Bray, deceased, the same amount of $23,832.94 was deducted as a miscellaneous expense of administration.

The stipulated facts show that in October of 1962 it became necessary to sell another block of stock in order to obtain additional funds for administration expenses. The selling expenses for this sale of stock were $4,911.42. The 1962 income tax is not before us but, since the estate tax return had been filed before this latter sale, the petition herein in docket No. 2757–64 asks for a refund of estate tax in the amount of $2,701.28, based on the right to take these sales expenses as administration expenses.

In connection with the stock sale expense item of $23,832.94 reported in Schedule D of the fiduciary income tax return for 1961, no statement and waiver of deductions referred to in section 642(g) of the Internal Revenue Code of 1954 has been filed and likewise, in connection with the stock sale expense item of $4,911.42 reported in Schedule D of the fiduciary income tax return for 1962, no statement and waiver of deductions referred to in section 642(g) of the Internal Revenue Code of 1954 has been filed.

Section 2053, I.R.C. 1954, provides, in part:

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

\* \* \* \* \* \* \*

(2) for administration expenses,

Section 812(b)(2) of the Internal Revenue Code of 1939 is the antecedent statute providing for the same deduction for administration expenses as is now contained in section 2053, I.R.C. 1954, *supra*. But section 642(g), I.R.C. 1954, provides, in part, that:

DISALLOWANCE OF DOUBLE DEDUCTIONS.—Amounts allowable under section 2053 \* \* \* as a deduction in computing the taxable estate of a decedent shall not be allowed as a deduction in computing the taxable income of the estate, unless there is filed, within the time and in the manner and form prescribed by the Secretary

or his delegate, a statement that the amounts have not been allowed as deductions under section 2053 * * * and a waiver of the right to have such amounts allowed at any time as deductions under section 2053 * * *

It is admitted petitioner took deduction for the brokerage fee and other selling expenses in the total sum of $23,832.94 as an administration expense under section 2053, I.R.C. 1954. Respondent makes no argument that said $23,832.94 would not be an allowable deduction under section 2053. On brief respondent merely states he disallowed it in order to preserve petitioner's option if it be decided the said selling expenses may not be used as an offset against the sale price of the stock in determining gain for income tax purposes. Petitioner has not filed the statement of waiver of deductions referred to in section 642(g), I.R.C. 1954, as it is petitioner's position that the statute is inapplicable where the selling expense of the stock is used only as an offset against the selling price in reporting the gain from the sale on the estate's income tax return.

In the 1942 Revenue Act there was added a new section 23(a)(2) to the 1939 Internal Revenue Code providing for some nonbusiness expense deductions (such as expenses "for the production or collection of income, or * * * the management, conservation, or maintenance of property held for the production of income") and this 1942 Revenue Act also added section 162(e) to the Internal Revenue Code of 1939, which is as follows:

Section 162(e), I.R.C. 1939:

(e) Amounts allowable under section 812(b) as a deduction in computing the net estate of a decedent shall not be allowed as a deduction under section 23, except subsection (w), in computing the net income of the estate unless there is filed, within the time and in the manner and form prescribed by the Commissioner, a statement that the items have not been claimed or allowed as deductions under section 812(b) and a waiver of the right to have such items allowed at any time as deductions under section 812(b).

It is petitioner's position that the addition of section 162(e) to the 1939 Code in 1942 made no change in the treatment of brokerage commissions and other security sales expenses. Petitioner's argument is that the situation that prevailed before 1942 was that the selling expenses in connection with the necessary sale of securities by a fiduciary of an estate were deductible for estate tax purposes as administration expenses and such expenses were also an offset against the selling price for the estate's income tax. There is no question but that this was the rule governing the treatment of such selling expenses prior to 1942. Respondent admits this. See *Estate of Dudley S. Blossom*, 45 B.T.A. 691, where we allowed the selling expenses as a deduction for estate tax and pointed out the same expenses had been used to "diminish gain and increase losses in computing the Federal income taxes of the estate."

It is possible such treatment continued for a while after 1942 but in

1956 respondent issued his ruling, Rev. Rul. 56–43, 1956–1 C.B. 210, wherein he interprets section 642(g), I.R.C. 1954, as forbidding the offset for income tax purposes of sale expenses allowed as administration expenses for estate tax. This ruling is as follows:

> Expenses incurred in the sale of property, other than by a dealer, are considered as an offset against the sale price and not deductible as an ordinary and necessary business expense. See G.C.M. 15430, C.B. XIV-2, 59 (1935). However, such expenses may not be used as an offset against the sale price of property in determining gain or loss for Federal income tax purposes where they have already been allowed as a deduction for Federal estate tax purposes. Such items of expense fall within the concept of section 642(g) of the Internal Revenue Code of 1954. Although section 642(g) of the Code refers to the disallowance of double deductions, it is the position of the Internal Revenue Service that such section contemplates the disallowance, as a *reduction* in computing the taxable income of the estate, of such items which have been allowed as a deduction in computing the taxable estate. See Rev. Rul. 240, C.B. 1953-2, 79.

It seems to be respondent's position that Congress has by the enactment of section 642(g), I.R.C. 1954, prohibited double tax benefits from a single economic transaction. In other words respondent reads the section as a *general limitation* against double tax benefits whether they arise from deductions or reductions. But it appears, contrary to respondent's position, that section 642(g) is only a *specific* limitation directed only against deductions.[1] See *Mary E. Burrow Trust*, 39 T.C. 1080, 1091, affd. 333 F. 2d 66.

It has long been the position of the Internal Revenue Service, as shown by rulings and regulations, that where it is necessary to raise funds to pay decedent's debts, expenses of administration, taxes or cash legacies, the brokerage fee and other selling expenses for selling property of the estate to obtain such funds are allowable deductions under section 2053 of the Internal Revenue Code of 1954 and antecedent statutes. Sec. 20.2053–3(d)(2), Estate Tax Regs., and *Estate of Dudley S. Blossom, supra.* In Regs. 80 (1934), art. 35, it was provided that: "A brokerage fee for selling property of the estate is deductible if the sale is necessary in order to pay the decedent's debts, the expenses of administration, or to effect distribution. Other expenses attending the sale are deductible * * *." Again it has long been the position of the Internal Revenue Service that brokerage fees and other selling expenses paid by an individual who is not a dealer in stocks or the fiduciary of an estate in connection with the sale of securities to pay debts, administration expenses, or legacies, are to be

---

[1] It is significant that in 1942, when Congress introduced sec. 162(e) into the 1939 Code (the predecessor section of sec. 642(g) of the 1954 Code), this Court had just held in 1941 in *Estate of Dudley S. Blossom,* that certain expenses were properly deductible for estate tax purposes and observed that these same expenses had already been used in computing the estate's income tax. In spite of this Congress did not see fit to treat offsets and deductions alike, but merely limited the statutory language in sec. 162(e) to deductions.

used only as an offset against selling price in an income tax return reporting the sale. See the opinion of the Ninth Circuit in *Spreckels v. Commissioner*, 119 F. 2d 667, affd. 315 U.S. 626, where the court traced the early regulations and rulings as far back as those respecting Revenue Acts of 1913 and 1916, which rulings and regulations are all to the effect that such brokerage fees and selling expenses paid by one who is not a dealer in securities are to be offset against selling price, and could not be used as business expense deductions under section 23(a) of the Internal Revenue Code of 1939.

We agree with petitioner that the 1942 Act did not mean to obliterate the long-standing distinction between offsets and true statutory deductions, but merely created a new class of nonbusiness income tax deductions in section 23(a)(2), I.R.C. 1939, available for living individual taxpayers and fiduciaries of estates filing income tax returns, and then limited the deductions under section 23, I.R.C. 1939, when used by the fiduciary of an estate, to use in either the income or estate tax.

In *Don A. Davis*, 4 T.C. 329, affd. 151 F. 2d 441, where we held that selling expenses incurred in the sale of securities paid by a nondealer were not allowable as deductions under section 23 of the 1939 Internal Revenue Code, we said:

The purpose of section 23(a)(2), *supra*, was to relieve from the harshness of the rule announced in *Higgins v. Commissioner*, 312 U.S. 212, and other cases of like import. It was intended to give a deduction for ordinary and necessary expenses to one not engaged in carrying on a business, limited, however, to the extent set forth in this subsection and under circumstances where such expenditures would be allowable to one engaged in carrying on a trade or business. * * *

* * * * * * *

We think it clear that Congress had no intention of changing the language of this section as construed by the Treasury regulations, which construction before 1942 had received the approval of the Supreme Court. In other words, the treatment of the selling commissions as an offset against the sale price and not deductible as an ordinary and necessary expense, except to dealers, was not to be disturbed.

Respondent argues that if this was true with respect to section 162(e) of the Internal Revenue Code of 1939, the statute was broadened in the 1954 Code, for section 162(e) of the I.R.C. 1939 referred to deductions under section 23, Internal Revenue Code of 1939, while the specific reference to the statutory business and nonbusiness deductions (or sec. 212, I.R.C. 1954) was not mentioned in section 642 (g), I.R.C. 1954. This is without significance. The Senate report (S. Rept. No. 1622, 83d Cong., 2d Sess., p. 340) at the time of the passage of section 642(g) of the Internal Revenue Code of 1954 observed that the section was "comparable" to section 162(e) of the Internal Revenue Code of 1939.

The phrase in section 162(e), I.R.C. 1939, "shall not be allowed as a deduction under section 23 * * * in computing the net income of the estate" in its setting in the 1939 Code, means the same as "shall not be allowed as a deduction in computing the taxable income of the estate" contained in section 642(g) of the Internal Revenue Code of 1954. An estate fiduciary computing the taxable income of the estate under the Internal Revenue Code of 1954 would use the same deductions he would use if he were computing the taxable income of the estate under section 23 of the Internal Revenue Code of 1939, as amended by the 1942 Revenue Act. As pointed out earlier the deductions for estate tax purposes that were allowable under section 812(b) of the Internal Revenue Code of 1939 insofar as material here are the same as those allowable under section 2053 of the Internal Revenue Code of 1954. The governing regulations are of long standing. Such selling expenses do not qualify as "deductions" for income tax purposes. See Income Tax Regs., sec. 1.263(a)–2(e), where such selling expenses are listed as examples of "capital expenditures," and Income Tax Regs., sec. 1.212–1(n), where it is stated: "Capital expenditures are not allowable as nontrade or nonbusiness expenses."

Respondent points to some expressions in our opinions where it was stated section 642(g), I.R.C. 1954, and its antecedent statute, section 162(e), I.R.C. 1939, were enacted to avoid the possibility of a double deduction of items as between income and estate taxes. See *Estate of Orville F. Yetter*, 35 T.C. 737, and *Mary E. Burrow Trust, supra*. Such statements are not support for respondent here for they have reference to true deductions for both income and estate tax computations. As pointed out in *Mary E. Burrow Trust, supra*, there is an "inherent difference in the nature of the income tax and the estate tax." The statute does not prohibit taking what is a setoff against selling price and not a true deduction in the income tax return and using the same item to reduce the estate in the estate tax return. In computing income from sales of securities the sales expenses are offset against the sales price or gross receipts to arrive at gross income within the suggested definition of gross income, "Gains derived from dealings in property," found in section 61(a)(3), I.R.C. 1954. Certainly the phrase "shall not be allowed as a deduction in computing the taxable income of the estate" found in section 642(g), I.R.C. 1954, must have reference to a deduction *from* gross income and not an item that is set off from a purchase price that is used before gross income is reached.

When selling expenses are offset against selling price the seller is being taxed on the gain he actually receives. When securities are valued as of the date of death, no account is taken of the fact that the fiduciary might have to sell them. It would seem to be unfair to tax

the estate on the date of death value, with no deduction for selling expenses, and equally unfair to deny the offset of selling expenses against selling price in computing the estate's income tax. We do not think Congress intended that result when it enacted section 162(e) of the 1939 Code and its successor statute, section 642(g), I.R.C. 1954. We hold for petitioner on the issue presented in both dockets.

The parties have settled certain other disputed items.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*