ESTATE OF WALTER E. DORN, DECEASED, FRANK DORN, WALTER E. DORN, JR., BEATRICE E. MATHEWS, AND BERNICE M. LANGSTON, CO-EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 921-69.  Filed August 26, 1970.

*Julian N. Stern*, for the petitioner.
*Sidney U. Hiken* and *Joyce E. Britt*, for the respondent.

### OPINION

FAY, *Judge*: Respondent determined a deficiency in the income tax of petitioner for the taxable year beginning November 12, 1964, and ending October 31, 1965, in the sum of $1,343.77. The sole issue for decision is whether in computing gain (or loss) realized from the sale of property, petitioner, who previously deducted the selling expenses incurred in such sale as administration expenses on its estate tax return, is precluded by section 642(g)[1] from offsetting the proceeds of sale by the amount of such selling expenses.

The facts have been fully stipulated by the parties. The stipulation of facts, together with exhibits attached thereto, is incorporated herein by this reference.

Decedent, Walter E. Dorn, died testate in San Francisco, Calif., on November 12, 1964. The executors of decedent's estate are Frank Dorn, Walter E. Dorn, Jr., Beatrice E. Mathews, and Bernice M. Langston.

In order to obtain funds with which to finance the administration of the estate and/or pay estate taxes, the Estate of Walter E. Dorn,

---

[1] All section references are to the Internal Revenue Code of 1954, unless otherwise indicated.

petitioner herein, sold during 1965 two parcels of real estate belonging to the estate. In selling such real estate petitioner incurred selling expenses totaling $8,213.46, of which $8,051.11 represented brokers' commissions. On its Federal estate tax return, petitioner deducted as administration expenses the sum of $8,051.11. A closing letter with respect to the decedent's estate was issued by the district director of internal revenue, San Francisco, Calif., on May 25, 1967.

Petitioner filed a U.S. fiduciary income tax return for the taxable year November 12, 1964, to October 31, 1965, on January 25, 1966, and an amended return on June 8, 1967, with the district director of internal revenue, San Francisco, Calif. On these returns petitioner reported the gain from the sale of the aforementioned real estate as follows:

Original return:

Sale of 10th Ave. Property:

| | |
|---|---|
| Sales price—sold 3/1/65 | $45,600.00 |
| Expenses of sale | 2,782.60 |
| Net proceeds | 42,817.40 |
| Basis—acquired 11/12/65 [1] | 44,000.00 |
| Loss on disposition | (1,182.60) |
| Capital loss limitation | (1,000.00) |
| Carryover to FYE 10/31/66 | (182.60) |

Sale of Hotel (sec. 1231 asset):

| | |
|---|---|
| Sales price—sold 9/4/65 | $96,422.12 |
| Plus: Assumption of liability | 4,266.18 |
| | 100,688.30 |
| Less: Expense of sale | 5,430.86 |
| Net proceeds | 95,257.44 |
| Basis—acquired 11/12/65 [1] | 97,500.00 |
| Loss on disposition | (2,242.56) |

[1] It is agreed that "11/12/65" is a typographical error which is hereby corrected to read "11/12/64".

Amended return:

Sale of 10th Ave. Property:

| | | |
|---|---|---|
| Sales price—sold 3/1/65 | | $45,600.00 |
| Expenses of sale | | 2,782.60 |
| Net proceeds | | 42,817.40 |
| Basis—per original return | 44,000.00 | |
| plus adjustment | 850.00 | |
| | | 44,850.00 |
| Loss on disposition | | (2,032.60) |
| Capital loss limitation | | (1,000.00) |
| Capital loss carryover FYE 10/31/66 | | (1,032.60) |

Sale of Hotel (sec. 1231 asset):

| | | |
|---|---:|---:|
| Sales price—sold 9/4/65 [1] | | $96,422.12 |
| Less: Expense of sale | | 5,430.86 |
| Net proceeds | | 90,901.26 |
| Basis—per original return | 97,500.00 | |
| Less: Adjustment | 1,077.88 | |
| | | 96,422.12 |
| Loss on disposition | | (5,430.86) |

[1] Total sales price on original return included the amount of an assumed liability of $4,266.18; and adjustment to the taxable estate eliminates this.

In his notice of deficiency respondent disallowed the claimed selling expenses with respect to the sale of the 10th Avenue property and the hotel to the extent of $2,730 and $5,321.11, respectively, on the ground that such disallowed amounts totaling $8,051.11 had been deducted on petitioner's estate tax return, citing section 642(g). Petitioner did not sign a waiver described in section 642(g) with respect to its Federal estate tax return.

Section 642(g)[2] provides in general for the disallowance of double deductions in the case of an estate which incurs expenses deductible both for estate and income tax purposes. Under this section amounts allowable as a deduction in computing the taxable estate are disallowed "as a deduction in computing the taxable income of the estate" unless there is filed a statement waiving the right to have such amounts allowed as a deduction from the gross estate. Petitioner, relying heavily upon this Court's decision in *Estate of Viola E. Bray*, 46 T.C. 577 (1966), affd. 396 F. 2d 452 (C.A. 6, 1968), takes the position that section 642(g) is, by its terms, applicable to statutory deductions alone and does not prohibit the use of selling expenses as an offset against the sales proceeds.

In *Estate of Viola E. Bray, supra*, this Court held that selling expenses incurred by an estate upon the sale of its securities may be subtracted as an offset from the proceeds of sale, notwithstanding the deduction of the same expenses in computing the estate tax liability of the estate. Accord, *Commerce Trust Co., Executor* v. *United States*,

[2] SEC. 642. SPECIAL RULES FOR CREDITS AND DEDUCTIONS.

(g) DISALLOWANCE OF DOUBLE DEDUCTIONS.—Amounts allowable under section 2053 or 2054 as a deduction in computing the taxable estate of a decedent shall not be allowed as a deduction in computing the taxable income of the estate or of any other person, unless there is filed, within the time and in the manner and form prescribed by the Secretary or his delegate, a statement that the amounts have not been allowed as deductions under section 2053 or 2054 and a waiver of the right to have such amounts allowed at any time as deductions under section 2053 or 2054. This subsection shall not apply with respect to deductions allowed under part II (relating to income in respect of decedents).

an unreported case (W.D. Mo. 1969, 24 A.F.T.R. 2d 69–5918, 69–2 U.S.T.C. par. 12,635); *Kreher* v. *United States*, an unreported case (M.D. Fla. 1970, 25 A.F.T.R. 2d 70–938, 70–1 U.S.T.C. par. 9,331); and *Mercantile Safe-Deposit & Trust Co.* v. *United States*, an unreported case (D. Md. 1970, 25 A.F.T.R. 2d 70–1310, 70–1 U.S.T.C. par. 12,685). Respondent, aware of the contrary weight of authority, seeks primarily the reversal of the *Bray* holding. Alternatively, respondent has attempted to distinguish the instant case from that of *Bray*.

Respondent's arguments as to the validity of the petitioner's position have been considered and rejected in the *Bray* case. Respondent contends here, as he did in *Bray*, that there is no distinction in operation and effect between an offset and deduction warranting the variant treatment given them in *Bray*. Both the offset and statutory deduction serve to reduce the gain realized or increase losses sustained. Thus, respondent argues, the policy underlying section 642(g), which is the denial of a double advantage from deductions available with respect to both income and estate taxes, is equally applicable to offsets and deductions. See Rev. Rul. 56–43, 1956–1 C.B. 210.[3]

While the offset and deduction bear the similarity suggested by respondent, they differ markedly in character and tax treatment. As pointed out in *Bray*, selling expenses are fundamentally capital expenditures akin to those which are added to the cost of property.[4] As such they are not deductible but may be utilized only as a reduction of the sales proceeds. Sec. 1.263(a)–2(e), Income Tax Regs.; *Spreckels* v. *Commissioner*, 315 U.S. 626 (1942); *Ward* v. *Commissioner*, 224 F. 2d 547 (C.A. 9, 1955), affirming 20 T.C. 332 (1953). While such reduction may result in increased losses, as respondent argues, the losses are in most instances subject to limitations applicable to capital losses[5] provided in section 1211(b). Furthermore, offsets, as in the case of basis, are taken into consideration in arriving at gross income. Gross income with respect to dealings in property is defined as the "gain" from such dealings. Sec. 61(a)(3). The term "gain," in turn, is described as the amount realized upon sale of the property less its adjusted basis. Selling expenses, whether viewed as a reduction of the amount realized or an addition to basis, reduce the amount of gain and hence the gross income resulting from the transac-

---

[3] This ruling has been criticized. See 65 Mich. L. Rev. 572, fn. 9.

[4] See *Columbus Die, Tool and Machine Co.*, a Memorandum Opinion of this Court dated Oct. 28, 1952, adding the expenses of condemnation to the basis of certain new replacement property acquired. The expenses, in that case, could not be offset against the proceeds, as is normally done in the case of selling expenses, because no gain was recognized in the transaction under the predecessor of sec. 1033, I.R.C. 1954.

[5] The notable exception is losses incurred on disposition of sec. 1231 assets where losses on the sale of such assets exceed the gains. In such case, the net losses are treated as ordinary deductions and are therefore not subject to the capital loss limitations.

tion. Statutory deductions, on the other hand, do not affect gross income but are subtracted therefrom in determining taxable income.

Respondent, in seeking to include offsets within the term "deduction" in section 642(g), ignores the fundamental distinctions outlined above. Such distinctions are not mere matters of form. Failure to take account of basis or offset in determining gross income would, for reasons indicated above, result in the taxation of gross receipts rather than gross income, contrary to the express purpose and statutory scheme of the Code. Moreover, the nontaxability of selling expenses in the present situation results from the absence of statutory provisions requiring their inclusion in gross income rather than from the deductibility of such expenses as in the case of true deductions. Congress, in its enactment of section 642(g), evidenced an intent to deny "deductions," often referred to as matters of legislative grace, rather than offsets which cannot be so classified. See *Commissioner* v. *Sullivan*, 356 U.S. 27 (1958). We cannot infer from the provisions of section 642(g), in the absence of explicit congressional mandate, an intention to tax gross receipts. As stated in *Bray*, Congress, well aware of the judicial and regulatory distinction between capital expenditures such as offsets or basis, on the one hand, and deductions on the other, has deemed it appropriate in section 642(g) to disallow only *"deduction[s]"* in computing the *taxable income* of the estate." (Emphasis added.) For reasons amply stated in *Bray*, as well as those indicated above, we reaffirm the holding of that case.

Respondent has also contended that *Bray* is distinguishable from the instant case in that the sales here gave rise to losses while those in *Bray* resulted in gain. Thus, whereas the selling expenses which offset the amount realized in *Bray* merely diminished gain, the selling expenses of the instant case have enlarged the losses. Such losses are deductible under section 165, which provides a deduction for losses sustained during the taxable year. Thus, respondent reasons, the disallowance of selling expenses here is dictated by section 642(g). In short, respondent attempts to draw a distinction between selling expenses which result in decreased gain and those which result in increased losses, characterizing the former as offsets but the latter as deductions.[6]

It is true, as has been argued, that the selling expenses which reduce the amount realized on the sale cause the transaction to yield a greater statutory deduction under section 165. However, in our view this fact cannot vary the fundamental character of the selling expenses which, we have stated, constitute an offset. To identify the losses ultimately sustained with the selling expenses by following the cause and effect

---

[6] See 65 Mich. L. Rev. 576, taking issue with respondent's argument.

reasoning of the respondent constitutes, in the present context, a distortion of the relevant statutory provisions. It is the selling expenses, rather than the ultimate loss resulting from the transaction, which have been deducted on the estate tax return. The loss incurred on the sale is thus properly deductible under section 165 notwithstanding the previous deduction of selling expenses on petitioner's estate tax return.

*Decision will be entered for the petitioner.*