## Lockhart Leasing Company, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket Nos. 2445–66 and 523–68    Filed February 16, 1970.

*Joseph J. Bullock,* for the petitioner.
*Charles W. Nyquist* and *John Gigounas,* for the respondent.

OPINION

Petitioner takes the primary position that it is entitled to the invest-
ment credit provided for in section 38 [2] since section 48 (d) [3] of subpart

SEC. 38. INVESTMENT IN CERTAIN DEPRECIABLE PROPERTY.
  (a) GENERAL RULE.—There shall be allowed, as a credit against the tax imposed by
this chapter, the amount determined under subpart B of this part.
  (b) REGULATIONS.—The Secretary or his delegate shall prescribe such regulations as
may be necessary to carry out the purposes of this section and subpart B.

B, referred to in section 38(a), specifically provides that a lessor may elect, with respect to any new section 38 property, to treat the lessee as having acquired such property. Petitioner states that it is clear from the provisions of section 48(d) that the lessor is entitled to the investment credit provided by section 38 unless he has elected to treat the lessee as having acquired the property.

Respondent answers this argument of petitioner's by pointing out that section 48(d) provides for a lessor to make the election to treat the lessee as having acquired the property only "with respect to any new section 38 property." Respondent points out that section 48(a) [4] defines section 38 property as tangible personal property with respect

---

[3] SEC. 48(d) CERTAIN LEASED PROPERTY.—A person (other than a person referred to in section 46(d)) who is a lessor of property may (at such time, in such manner, and subject to such conditions as are provided by regulations prescribed by the Secretary or his delegate) elect with respect to any new section 38 property to treat the lessee as having acquired such property for an amount equal to—

(1) except as provided in paragraph (2), the fair market value of such property, or

(2) if such property is leased by a corporation which is a member of an affiliated group (within the meaning of section 46(a)(5)) to another corporation which is a member of the same affiliated group, the basis of such property to the lessor.

The election provided by the preceding sentence may be made only with respect to property which would be new section 38 property if acquired by the lessee. For purposes of the preceding sentence and section 46(c), the useful life of property in the hands of the lessee is the useful life of such property in the hands of the lessor. If a lessor makes the election provided by this subsection with respect to any property, the lessee shall be treated for all purposes of this subpart as having acquired such property. In the case of suspension period property which is leased and is property of a kind which the lessor ordinarily leases to one lessee for a substantial portion of the useful life of the property, the lessor of the property shall be deemed to have elected to treat the first such lessee as having acquired such property for purposes of applying the last sentence of section 46(a)(2). In the case of section 38 property which (i) is leased after October 9, 1966 (other than pursuant to a binding contract to lease entered into before October 10, 1966), (ii) is not suspension period property with respect to the lessor but is suspension period property if acquired by the lessee, and (iii) is property of the same kind which the lessor ordinarily sold to customers before October 10, 1966, or ordinarily leased before such date and made an election under this subsection, the lessor of such property shall be deemed to have made an election under this subsection with respect to such property.

[4] SEC. 48. DEFINITIONS : SPECIAL RULES.

(a) SECTION 38 PROPERTY.—

(1) IN GENERAL.—Except as provided in this subsection, the term "section 38 property" means—

(A) tangible personal property, or

(B) other tangible property (not including a building and its structural components) but only if such property—

(i) is used as an integral part of manufacturing, production, or extraction, or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or

(ii) constitutes a research or storage facility used in connection with any of the activities referred to in clause (i), or

(C) elevators and escalators, but only if—

(i) the construction, reconstruction, or erection of the elevator or escalator is completed by the taxpayer after June 30, 1963, or

(ii) the elevator or escalator is acquired after June 30, 1963, and the original use of such elevator or escalator commences with the taxpayer and commences after such date.

Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more.

to which depreciation, or amortization in lieu of depreciation, is allowable. It is respondent's position that since petitioner, in substance, operated only a financing operation, no depreciation was allowable to petitioner with respect to the property which it leased to its lessee. Respondent's primary position is that although the form used by petitioner was that of leasing the property owned by petitioner to various lessees, the substance of the transaction engaged in by petitioner was merely a financing operation. Respondent worded his contention in his brief as follows:

the factual issue to be decided by the Court is whether Lockhart was in the business of leasing equipment or whether in substance and in economic reality Lockhart was acting in the capacity of a financing institution and holding mere security interest in the equipment.

Even though respondent in his brief states the issue to be whether petitioner's operation was in substance that of a financing institution holding a mere security interest, he does, in places in effect, argue that if the substance of the transaction is not a mere financing operation, then in many instances the substance of the transaction between petitioner and its various lessees resulted in a sale by petitioner of the property to the lessee. In fact, in the notices of deficiency respondent did not determine that petitioner was engaged in a financing operation but determined that the income reported by petitioner as rental income from leased equipment was in reality income from conditional sales of such equipment and since petitioner had not elected to report such income on the installment basis of accounting provided by section 453, it could not defer any of the income received from the conditional sales.[5]

Petitioner makes no objection to respondent's contention that its operation was a mere financing operation even though his determination in the notices of deficiency was that the transactions entered into by petitioner were conditional sales, but contends that under the facts here present the transactions were in substance neither financing operations nor conditional sales, but were in substance as well as in form leases of equipment.

It might be pointed out that petitioner at the trial conceded that it was not entitled to the investment credit on any of the property which was subject to leases of less than 48 months since petitioner conceded the useful life to it as a lessor was in most instances substantially equal to the original term of the lease, and, therefore, under the provisions of section 48(a) any such property would not be section 38 property entitled to an investment credit because of the requirement in section 48(a) that section 38 property have a useful life of

[5] Respondent at the trial conceded that if petitioner's income was income from conditional sales it was entitled to report such income on the installment basis.

4 years or more. Petitioner also conceded at the trial, with respect to certain specific leases, that the property was not section 38 property because such property had been used by the lessee of the property before the property was acquired by petitioner and was used by the lessee thereafter, and therefore did not meet the definition in section 48(c) [6] of used section 38 property.

Petitioner also conceded with respect to one lease that it had passed on to the lessee the right to the investment credit in accordance with section 48(d). It is not clear from the record whether the investment credit as claimed by petitioner on its returns was computed by including the cost of any specific items which petitioner now concedes are not properly entitled to be included in the property subject to investment credit, but apparently there is no disagreement between the parties insofar as specific items are concerned although some adjustment to the amounts claimed by petitioner on its returns may be necessary because of petitioner's concessions.

We do not agree with petitioner's contention that section 48(d) grants to a taxpayer a right to an investment credit merely because he purchases property and in form makes a lease of the property to another. We agree with respondent that section 48(d) merely gives to a lessor the right to pass on to a lessee the investment credit with respect to property which otherwise the lessor would be entitled to consider as new section 38 property.[7] We also agree with respondent that section 48(a) is clear that section 38 property means tangible personal property with respect to which depreciation is allowable to the taxpayer claiming the investment credit.

Our issue is, therefore, whether under the facts here present, the property which petitioner leased to its various lessees was property with respect to which petitioner was entitled to claim depreciation. If in substance as well as in form, the transactions entered into by

---

[6] SEC. 48(c) USED SECTION 38 PROPERTY.—

(1) IN GENERAL.—For purposes of this subpart, the term "used section 38 property" means section 38 property acquired by purchase after December 31, 1961, which is not new section 38 property. Property shall not be treated as "used section 38 property" if after its acquisition by the taxpayer, it is used by a person who used such property before such acquisition (or by a person who bears a relationship described in section 179(d)(2) (A) or (B) to a person who used such property before such acquisition).

[7] Respondent at the trial offered the testimony of an official of Associated Sheet Metal Co. with respect to a lease by that company from petitioner dated Jan. 1, 1962, of hydraulic press costing $17,700 for a term of 60 months at a monthly rental of $389.41. This witness testified that Associated Sheet Metal Co. first entered the item on its books as leased equipment but later upon advice of its accountant, capitalized the cost of the press and in 1962 claimed depreciation and an investment credit with respect to the cost of the press even though the witness considered the press to be the property of petitioner. We made no finding based on his testimony since in our view the opinion of the accountant of Associated Sheet Metal Co. as to the legal effect of the transaction between that company and petitioner is not properly a factual finding. However, we here note the fact of this testimony to point up the problem raised by the type of agreements petitioner entered into with its lessees.

petitioner with its various lessees were leases, the various items of property were tangible personal property with respect to which petitioner would be entitled to depreciation. We must determine whether, as a factual matter, petitioner was in substance as well as in form the lessor of the various items of property, or whether the substance of the transaction is a financing operation by petitioner or conditional sales by petitioner of the property to the various lessees. Our attention has not been called to, nor have we found, any cases in which this precise question has been considered with respect to determining a taxpayer's right to the investment credit with the exception of the case of *Lockhart Leasing Co.* v. *United States*, an unreported case (D. Utah 1969, 24 A.F.T.R. 2d 69–5794, 69–2 U.S.T.C. par. 9705), which involved the fiscal year 1963 of the petitioner in the instant case. In *Lockhart Leasing Co.* v. *United States, supra*, the District Court, on the basis of findings of fact and conclusions of law, but without an opinion, held that the property which was acquired by Lockhart Leasing Co. and used by its customers pursuant to the equipment-lease agreements served as a basis for the allowance of the investment credit provided for in section 38(a).

There have been numerous cases which have considered whether an agreement which was in form a lease was in substance a sale for the purposes of determining whether income should be reported by a taxpayer as rental receipts or income from the sale of property and of determining whether a taxpayer was entitled to deduct amounts paid as rent or was required to consider the amounts as a capital investment in property purchased and recover the investment through depreciation deductions with respect to the property. Both parties cite and discuss a number of these cases. Respondent relies primarily on *Estate of Delano T. Starr*, 30 T.C. 856 (1958), reversed on other grounds 274 F. 2d 294 (C.A. 9, 1959), and *Mt. Mansfield Television, Inc.* v. *United States*, 239 F. Supp. 539 (D. Vt. 1964), affirmed per curiam 342 F. 2d 994 (C.A. 2, 1965), certiorari denied 382 U.S. 818 (1965). Petitioner points to the factual differences in the cases cited by respondent and the present case and relies on such cases as *Breece Veneer & Panel Co.* v. *Commissioner*, 232 F. 2d 319 (C.A. 7, 1965), reversing 22 T.C. 1386 (1954); *Benton* v. *Commissioner*, 197 F. 2d 745 (C.A. 5, 1952), reversing a Memorandum Opinion of this Court; and *Norman Baker Smith*, 51 T.C. 429 (1968). Respondent points to distinguishing factors in the cases cited by petitioner and the instant case.

None of the cases cited by the parties, nor any we have found, is on all fours factually with the instant case. All of the cases state that substance rather than form is controlling for the purpose of determining the tax effect of the transaction and that the intent of the parties must be determined not by how they framed the transaction but

rather by the practical effect of the agreements entered into by them. See *Karl R. Martin*, 44 T.C. 731 (1965), affirmed on this issue 379 F. 2d 282 (C.A. 6, 1967). All the cases recognize that the form of the instrument involved is not controlling. However, in determining whether in fact an agreement is a lease or a sale, various cases are controlled by the factual situation there present.

In some cases great reliance has been placed on whether there was an option on the part of the taxpayer to purchase the property at the end of the lease period, particularly if the option to purchase was for a nominal sum. However, as pointed out in *Kitchin v. Commissioner*, 353 F. 2d 13 (C.A. 4, 1965), affirming a Memorandum Opinion of this Court and withdrawing a prior opinion of that Court of Appeals which had reversed the Memorandum Opinion of this Court, the fact that there is an option to buy at the end of the lease period does not require the conclusion that the transaction is in fact a sale. In that case it was stressed that the periodic rental payments represented a fair return for the use of the equipment.

The factual situation in the instant case is a very close one. Although the leases are substantially all on the same form, the amounts provided for rental payments and for the option to purchase at the end of the term, where such an option is given, give a reasonably clear indication, when considered in light of the other provisions, that the leases are in substance as well as in form, leases. Particularly is this so with respect to most of the items covered by these leases which are easily removable equipment such as were involved in *Kitchin v. Commissioner*, *supra*, and not an addendum to property such as were involved in *Estate of Delano T. Starr*, *supra*, and *Mt. Mansfield Television, Inc. v. United States*, *supra*. A few of the items more nearly approach the situation in the *Starr* and *Mt. Mansfield* cases. The lease, itself, made a specific provision that no title passed to the lessee. The record shows a fair number of instances where property was actually returned to petitioner. Although we do not consider the facts here strongly to support either view, and in certain instances were the particular leases analyzed as a separate matter, we might be inclined to conclude that the substance of the transaction was a conditional sale, these items are minor as compared to the overall transactions which primarily give more the indication of leases.

In our view the evidence does not support respondent's contention that petitioner was engaged in a financing business. The evidence shows that petitioner purchased the property, and only in one instance had any agreement from the person from whom it purchased the property to take it back in case of difficulty with the lease. Were we to decide only respondent's stated contention that petitioner was in substance engaged in a financing business, we would find this case less difficult.

Petitioner made outright purchases of the property it leased and in most instances had no right to have the person from whom it purchased the property take it back or assist in the disposition of it under any circumstances. In less than 10 percent of the instances involved did petitioner have any guarantee with respect to performance by the lessee. The overall operation does not, in our view, in substance show a mere financing operation.

Our major difficulty is in determining whether in some instances at least, petitioner had not in substance made a sale instead of a lease of the property. However, on the overall record, and particularly considering the relatively small number of leases where an option to purchase was given to the lessee as well as the fact that where no such option was given, if the lessee desired to purchase, the purchase price was negotiated on the value of the property at the time of the purchase, we have concluded that the agreements between petitioner and its customers were in substance as well as in form leases. See *Estate of Clarence B. Eaton*, 10 T.C. 869, 881–882 (1948), and cf. *Truman Bowen*, 12 T.C. 446 (1949). See also *Arkansas Bank & Trust Co.* v. *United States*, 224 F. Supp. 171 (W.D. Ark. 1963), and *Gem Incorporated* v. *United States*, 192 F. Supp. 841 (N.D. Miss. 1961).

We therefore hold that petitioner is entitled to investment credit with respect to the property which it had under lease for a period of 4 years or more, except with respect to those properties which were acquired from lessees and leased back to the lessees and with respect to those properties where petitioner had passed on to the lessee the investment credit.

*Decision will be entered under Rule 50.*