**UNITED STATES TRUST COMPANY, Trustee, Jean C. Lindsey, Cynthia C. Saint-Amand, Margaret A. Chisolm, and the Estate of Alexander F. Chisolm, Deceased, Jean C. Lindsey, Successor Executrix, Plaintiffs,**

v.

**The INTERNAL REVENUE SERVICE, an Agency of the United States of America and the United States of America, Defendants.**

Civ. A. No. J83–0909(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 28, 1985.

Kenneth I. Franks, Charles G. Copeland, R. Nash Neyland, Jackson, for plaintiffs.

George Phillips, U.S. Atty., Jackson, William D.M. Holmes, Tax Div., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION
## AND ORDER

BARBOUR, District Judge.

This matter is before the Court on Cross-Motions for Summary Judgment. The material facts are either stipulated or uncontradicted on the record. The material facts are as follows.

### FACTS

Alexander F. Chisholm (the "decedent") died on or about March 12, 1974, a resident of the State of Mississippi, and left a will and testament dated May 17, 1967, which was duly admitted to probate in the Chan-

cery Court of the Second Judicial District of Jones County, Mississippi. The will provided in pertinent part:

> I give to the Chisholm Foundation, a New York membership corporation, a sum equal to ten percent (10%) of the value of my gross testamentary estate as finally determined in the Federal estate tax proceeding relating to my Estate, provided that such bequest is deductible from my gross Estate in determining my taxable Estate for Federal Estate tax purposes.

Ten percent of the decedent's gross testamentary estate was determined to be $2,473,719.00.

During the period of March 12, 1974, through December 31, 1974, no part of the specific bequest of $2,473,719.00 was paid by the Executor to the Chisholm Foundation. During calendar year 1975, the Estate distributed $1,505,000.00 in cash and $512,635.00 in stock to the Chisholm Foundation in partial fulfillment of the ten percent bequest. The cash distributions were made in eleven equal monthly installments of $125,000.00 and one monthly installment of $130,000.00. These monthly cash distributions were made from the Estate's bank account at First National Bank of Laurel, Account Number 46–353–5 styled "Estate of Alexander F. Chisholm." The account contained monies of the Estate derived from 1974 and 1975 income and corpus of the Estate; however, at all times the amount of current 1975 income of the Estate in the account exceeded the amount distributed to the Chisholm Foundation and

necessary to pay the Estate's current administrative expenses.[1] No income of the Estate was distributed to a beneficiary of the Estate other than to the Chisholm Foundation.

Thereafter, the Estate filed a Federal Estate Tax Return with the Internal Revenue Service which claimed an estate tax deduction pursuant to 26 U.S.C. § 2055(a)(2), for the entire amount of the $2,473,719.00 specific bequest, which was distributed to the Chisholm Foundation during the calendar years 1975 and 1976. The Estate Tax deduction was allowed in full by the Internal Revenue Service pursuant to § 2055(a)(2).

Of the $1,505,000.00 in cash distributed to the Foundation in calendar year 1975, the Estate deducted $1,240,467.00 from its 1975 gross income as a deduction for distributions to beneficiaries under 26 U.S.C. § 661(a)(2). These distributions did not qualify for a deduction for distributions to charitable organization pursuant to 26 U.S.C. § 642(c) because the Will did not specify that the distribution come from income.

In auditing the Estate's 1975 income tax return, the IRS disallowed the Estate's § 661(a)(2) deduction for $1,240,467.00 of the $1,505,000.00 of current income distributed to the Foundation in calendar year 1975. Appropriate protests were made to no avail and on or about December 28, 1981, an additional $1,434,822.42 in taxes and interest was paid on behalf of the Estate to satisfy the claimed deficiency in the Estate's income taxes for calendar year

---

1. According to affidavits submitted by two of the Estate's certified public accountants from the Arthur Andersen & Company firm in New Orleans, Louisiana, it was the intent of the Estate to fund the contributions to the Chisholm Foundation from its current income from sales of oil, gas and sulphur from Jay Field. Income from these sales were deposited in the First National Bank of Laurel Account No. 46–353–5 and all distributions to the Chisholm Foundation were made the same day or shortly thereafter from this account. At no time were distributions to the Chisholm Foundation made when there was not more money in the account derived from the Estate's current 1975 undistributed income than was needed to fund distribu-

tion. At calendar year end 1975 the income from sales of oil, gas and sulphur alone, exceeded the amount of cash distributions to the Chisholm Foundation and Estate administration expenses by $1,816,029.00. Furthermore, the Government has stipulated that, "prior to each of the monthly distributions in 1975 described in paragraph no. 11 above there was no deposit in such account an amount of money derived from current 1975 income of the estate which exceeded each of the monthly distributions to the Chisholm Foundation in the estate's current administrative expenses." The government also stipulated that, "the amount claimed as a deduction did not exceed the Estate's distributable net income."

1975. Of this amount, $1,281,596.72 is attributable to the IRS's disallowance of the § 661(a)(2) distribution deduction.

On May 17, 1982, an amended Estate income tax return was filed for calendar year 1975, claiming a refund of the taxes and interest wrongfully assessed and collected by the IRS. On August 23, 1983, the Estate received a Notice of Disallowance informing the Estate that its claim for refund was denied. This suit was timely filed pursuant to 26 U.S.C. § 6532, seeking a judgment for federal income taxes and interest previously paid by the Estate for the taxable year 1975 in the amount of $1,281,596.72, plus interest as provided by law and attorney's fees as provided by 28 U.S.C. § 2411(a) and 26 U.S.C. § 7430.[2]

Jurisdiction to determine this issue is conferred upon this Court by 28 U.S.C. § 1346(a)(1).

## QUESTION FOR DECISION

The Court having concluded that the distributions at issue did come from distributable net income rather than from corpus, the question for decision is: Is the Estate allowed a § 661(a)(2) distribution deduction for amounts of its current income which it distributed to the Chisholm Foundation, a beneficiary of the Estate and a qualified charitable organization, when the distribution did not otherwise qualify as a § 642(c) deduction for distributions to qualified charities, and the Estate had already claimed and been allowed an Estate tax deduction for the amount of the ten percent bequest, $2,473,719.00, pursuant to 26 U.S.C. § 2055(a)(2)?

## I. STATUTES AND REGULATIONS

Although Sections 661 and 663[3] are most directly involved in the determination of the present controversy, these sections and the regulations purporting to interpret them must be analyzed in light of sur-

rounding and related Internal Revenue Code sections.

Section 641 provides generally that income received by an estate during the administration or settlement of the estate is taxable income. Section 642(c) provides for an income tax deduction in the following situation:

(c) Deduction for amounts paid or permanently set aside for a charitable purpose. (1) General Rule. In the case of an estate or trust (other than a trust meeting the specifications of subpart B), there shall be allowed as a deduction in computing its taxable income (in lieu of the deduction allowed by section 170(a) relating to deduction for charitable, etc., contributions and gifts) any amount of the gross income, without limitation, which *pursuant to the terms of the governing instrument* is, during the taxable year, paid for a purpose specified in section 170(c)....

Section 643 defines "Distributable Net Income" of the Estate.

The deduction claimed in the instant case is that provided by Section 661(a)(2). Section 661 provides in pertinent part:

(a) Deduction. In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate or trust (other than a trust to which subpart B applies) the sum of—

(1) any amount of income for such taxable year required to be distributed currently (including any amount required to be distributed which may be paid out of income or corpus to the extent such amount is paid out of income for such taxable year); and

(2) *any other amounts properly paid or credited* or required to be distributed for such taxable year; *but such deduction shall not exceed the distributable net income of the estate or trust.* (Emphasis ours).

---

2. The parties have stipulated that the question of whether plaintiff is entitled to attorney's fees will be raised with the Court at a later time, depending upon the manner in which these Motions for Summary Judgment are resolved.

3. All citations are to the Internal Revenue Code of 1954, 26 U.S.C.

Treasury Reg. § 1.661(a)–2, "Deduction for Distributions to Beneficiaries" provides in pertinent part:

(A) In computing the taxable income of an estate or trust there is allowed under § 661(a) as a deduction for the distributions to beneficiaries the sum of:

(1) the amount of income for the taxable year which is required to be distributed currently and

(2) any other amounts properly paid or credited or required to be distributed for such taxable year.

However, the total amount deductible under § 661(a) cannot exceed the distributable net income as computed under § 643(a) and as modified by § 661(c).

(B) The term "income required to be distributed currently" [in § 661(a)(1)] includes any amount required to be distributed which may be paid out of income or corpus (such as an annuity) to the extent it is paid out of income for the taxable year. . . .

(C) The term "any other amounts properly paid or credited or required to be distributed" [in § 661(a)(2)] includes all amounts properly paid, credited or required to be distributed by an estate or trust during the taxable year other than income required to be distributed currently. Thus, the term includes the payment of an annuity to the extent it is not paid out of income for the taxable year, and a distribution of property in kind . . . *where the income of an estate or trust may be accumulated or distributed in the discretion of a fiduciary, or where the fiduciary has a power to distribute corpus to a beneficiary, any such discretionary distribution would qualify under § 661(a)(2).*

Section 662, "Inclusion of Amounts in Gross Income of Beneficiaries of Estates and Trusts Accumulating Income or Distributing Corpus" provides generally for inclusion in the taxable income of beneficiaries for the amounts of income passed through to them to the estate.

Section 663, "Special Rules Applicable to Sections 661 and 662" provides in pertinent part:

(a) Exclusions. There shall not be included as amounts falling within Section 661(a) or 662(a)–. . .

(2) Charitable, etc. Distributions. Any amount paid or permanently set aside or otherwise qualifying for the deduction provided in Section 642(c). . .

Treasury Reg. § 1.663(a)–2, "Charitable, etc. Distributions" provides in pertinent part:

Any amount paid, permanently set aside, or to be used for the charitable, etc. purposes specified in § 642(c) and which is allowable as a deduction under that section is not allowable as a deduction to an estate or trust under § 661 or treated as an amount distributed for purposes of determining the amounts includable in gross income of beneficiaries under § 662. *Amounts paid, permanently set aside, or to be used for charitable, etc. purposes are deductible by estates or trusts only as provided in § 642(c).*

The parties have stipulated that the Estate was not entitled to a § 642(c) deduction because the will did not specifically provide that the bequest was to be funded from current income.

■ Sections 661 and 662 form and implement the "conduit" theory of estate and trust taxation. If an estate or trust distributes income to a beneficiary under these sections, the income is carried out of the estate and is included in the beneficiary's income for taxation purposes. Section 663 provides that an estate or trust is not allowed an additional deduction under § 661 for amounts distributed to a charitable organization when such distribution already carried out estate income under § 642(c). The first sentence of Treasury Reg. § 1.663(a)–2 conforms with this intent. The second sentence, however, goes further and purports to interpret § 663 as precluding any deduction other than a deduction under § 642(c).

■ The statute itself is explicit and unambiguous and indicates that Congress intended only to prevent an estate from taking two *income tax* deductions for the same distribution: one under § 642(c) and one under § 661. The legislative history of § 663 makes this clear. In House Report No. 1337 the House construed the meaning of § 663 in conjunction with § 642(c) and stated:

> Since the estate or trust is allowed a deduction under § 642(c) for these amounts, they are not allowed as an additional deduction for distributions nor are they treated as amounts distributed for purposes of § 662
>
> . . . .

H.R.Rep. No. 1337, 83d Cong., 2d Sess., U.S.Code Cong. & Admin.News, p. 4344 (1954). In Senate Report No. 1622, the Senate also construed § 642(c) and § 663 and noted:

> Since the estate or trust is allowed a deduction under § 642(c) for amounts paid, permanently set aside, or otherwise qualifying for the deduction provided in that section, such amounts are not allowed as an additional deduction for distributions, nor are they treated as amounts distributed for purposes of § 662 in determining the amounts includable in the gross income of beneficiaries.

S.R. No. 1622, 83d Cong., 2d Sess., U.S. Code Cong. & Admin.News, p. 4995 (1954).

■ Where the language of the statute and the legislative history clearly indicate one interpretation, and a Treasury Regulation interprets the statute in a contrary manner, the court must determine how much weight to accord the Treasury Regulation. Section 7805 of the Code gives the IRS the *general* power to promulgate regulations to interpret revenue statutes. Section 7805 provides:

> Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary or his delegate shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regula-

tions as may be necessary by reason of any alteration of law in relation to internal revenue.

Regulations enacted pursuant to this general delegation of authority are contrasted with situations in which Congress grants the IRS the specific power to promulgate regulations to interpret a particular statute. As such, Treasury Reg. § 1.663 is entitled to less deference. In *U.S. v. Vogel Fertilizer Co.*, 455 U.S. 16, 102 S.Ct. 821, 70 L.Ed.2d 792 (1982) the Court, in considering a regulation promulgated under Section 7805 stated:

> The Commissioner has promulgated Treas.Reg. § 1.563–1(a)(3) interpreting this statute only under his general authority to "prescribe all needful rules and regulations." 26 U.S.C. § 7805(a). Accordingly, "we owe the interpretation less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision."

*Id.* at 24, 102 S.Ct. at 827, *quoting, Rowan Companies v. U.S.*, 452 U.S. 247, 253, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981). In *Manhatten General Equipment Co. v. Commissioner*, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528 (1936) the Court noted:

> The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law—for no such power can be delegated by Congress—but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute is a mere nullity. . . . And not only must a regulation, in order to be valid, be consistent with the statute, but it must be reasonable.

*Id.* at 134, 56 S.Ct. at 399. In *Alcoma Association v. United States*, 239 F.2d 365, 367 (5th Cir.1956), the Fifth Circuit held that where a statute explicitly provides for

a deduction, the IRS "cannot cut it down without specific statutory authority." [4]

 In view of the favored status of charitable contributions [5] and in light of the clear intent of Congress expressed in the legislative history and in the relevant statutes themselves, the Court is of the opinion that the second sentence of Treasury Reg. § 1.663(a)–2 is entitled to no great deference and should not be enforced to preclude the subject income tax deduction.

## II. CASE LAW INTERPRETING TREAS.REG. § 1.663(a)–2

It appears that only two reported cases and one unreported decision have construed the validity of the second sentence of Treas.Reg. § 1.663(a)–2. In *Mott v. United States*, 462 F.2d 512, 199 Ct.Cl. 127 (1972), *cert. denied*, 409 U.S. 1108, 93 S.Ct. 902, 34 L.Ed.2d 688 (1973), the estate sought a Section 661(a)(2) deduction for distributions out of corpus to a foundation, which did not qualify for § 642(c) treatment. The balance of the estate, including all of the estate income, was left to a (non-charity) individual. The court noted:

> [T]he government also asks us to interpret Section 661(A) as permitting a deduction only for distributions to *taxable* beneficiaries, based upon its argument that Section 661 must be read as interdependent with Section 662. That is, as we understand the Government's argument, the incidence of the tax on the income of an estate must be allocated between estate and beneficiary, and to the extent that the beneficiary is exempt from the tax imposed by Section 662, any distributions to that beneficiary would not be deductible by the estate under Section 661.... We think it is sufficient to say that, under the facts of this case, the Government's position accords with the general intent of Congress in enacting

the distribution rules and, as we discuss below, is in accord with what we believe to be an *implied* Congressional intent to prevent all charitable distributions, whether or not deductible under Section 642(c), from entering into the operation of the distribution rules.

*Id.* at 518 (emphasis added). The court cited to no statutory authority for its finding that Congress impliedly intended to exclude charities from § 661 distributions. Furthermore, while the court found the second sentence of Treas.Reg. § 1.663(a)–2 controlling, the court noted that the sentence was not supported by the express language of the statute. The court noted:

> From our reading of [Treas.Reg. § 1.663(a)–2], two things seem clear. First, the [second sentence] is dispositive of the issue in this case since it prevents an estate from claiming as a deduction under Section 661(a)(2) any amounts distributed to a charitable beneficiary except as permitted by Section 642(c). Second, however, *there is nothing in Section 663(a)(2), the statutory provision under which this regulation was promulgated, which expressly supports the rule announced in the regulation.* Section 663(a)(2) provides *only* that an estate or trust may not deduct under Section 661 any amounts which are *also deductible* under Section 642(c); it does not specifically cover situations like the one here, where amounts paid to a charitable organization do not qualify for the charitable deduction.

462 F.2d at 517. (emphasis added).

The Court was concerned however that the Section 661 deduction would be used to pass income tax free to a non-charitable beneficiary. The court noted:

> [T]he estate will pay no tax on the income which it accumulates, because that income will be offset by deductions for

---

4. Indeed, where as here, the statute is clear and unambiguous, it should not be interpreted by regulation at all, *see Quarles v. St. Clair*, 711 F.2d 691 (5th Cir.1983).

5. Exemptions pertaining to charitable contributions reflect basic public policy priorities and

should be generously construed. *See, Helvering v. Bliss*, 293 U.S. 144, 155, 55 S.Ct. 17, 20, 79 L.Ed. 246 (1934); *United States v. Provident Trust Company*, 291 U.S. 272, 285, 54 S.Ct. 389, 392, 78 L.Ed. 793 (1934); *Rockefeller v. C.I.R.*, 676 F.2d 35, 42 (2d Cir.1982).

its distributions of corpus to the Teagle Foundation. Later on, the estate can distribute the accumulated income to Jane [Teagle (the income recipient)] tax-free.

*Id.* at 519. Faced with a situation in which income passed tax-free to a non-charitable entity, the court read an implied congressional intent into the statute to preclude application of Section 661 to distributions to charities. Even so, the court limited its ruling by stating:

The Government's position seems to be correct in the context of this case, but we do not hold that it is a general rule which may be applied in every conceivable situation that may arise under the provisions of the Code here considered.

*Id.* at 518.

In *Estate of A. Lindsay O'Connor,* 69 T.C. 165 (1977), an estate claimed a § 661(a)(2) deduction for its distributions of income and corpus equal to Distributable Net Income. Relying upon Treas.Reg. § 1.663(a)–2, the IRS denied the deduction. In a decision by a divided court, the majority upheld the position of the IRS, relying upon *Mott v. United States,* 462 F.2d 512, 199 Ct.Cl. 127 (1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 902, 34 L.Ed.2d 688 (1973) and *Commissioner v. South Texas Lumber Company,* 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948) (The validity of an IRS regulation must be sustained unless it is "unreasonable and plainly inconsistent with the revenue statutes ..."). The dissent argued that estates should be allowed a § 661(a)(2) deduction for all amounts distributed to a charitable organization so long as such amount had not already been deducted under § 642. The dissent noted:

Therefore, neither the legislative history nor the statute requires the conclusion that an amount distributed by an estate or trust to a charity, which does not meet the requirements of Section 642(c), cannot under any circumstances qualify for a deduction under Section 661(a). Under a literal interpretation of the statute a finding that Section 642(c) is inapplicable

... in fact makes Section 663(a)(2) inapplicable.

In my opinion, Section 1.663(a)–2, Income Tax Regs., is inapplicable to the facts before us; the regulation is consistent with the aforenoted statute and legislative history. Congress having authorized an exceptionally broad deduction for charitable gifts under Section 642(c) understandably wanted to prevent a double deduction under Section 661. To deny the deduction under Section 642(c) because of its inapplicability and then to further deny a distribution deduction under Section 661 would be the killing of two birds with one stone. In my view the second sentence of Section 1.663(a)–2, Income Tax Regs., must be read with the first sentence to preclude a deduction under Section 661 when both Section 642(c) and Section 661 are applicable. However, where Section 642(c) is inapplicable, one must then test the deductibility of the distribution to the foundation under Section 661.

69 T.C. at 195.

In *Pullen v. United States,* 1979 Fed. Tax.Rptr. (CCH) § 9105, a distribution of corpus was made to a tax-exempt foundation. The estate claimed a § 661(a)(2) deduction which was denied by the IRS in reliance upon Treas.Reg. § 1.663(a)–2. The *Pullen* court, as did the courts in *Mott* and *O'Connor,* found an "implied congressional intent" to prevent distributions to charitable organizations under § 661.

■ This Court, having reviewed the relevant statutes, regulations and statutory history, has found no congressional intent to insure that all distributions are taxed at least once. There is no statute, cited to or found by this Court, which prohibits a double deduction such as that sought in the instant case. The Estate having taken an estate tax deduction under § 2055 now seeks an income tax deduction under § 661. The government argues that the Estate should not be allowed to claim an estate tax deduction and an income tax deduction for the same distribution. The Court is of the opinion that the estate taxation provi-

sions in the Internal Revenue Code are separate and distinct from the income tax provisions and are not mutually exclusive. In *Farid-EsSultaneh v. Commissioner*, 160 F.2d 812 (2d Cir.1947) the court noted, "the income tax provisions are not to be construed as though they were in pari materia with either the estate tax law or the gift tax statutes." *Id.* at 814–15. In *Edwards v. Phillips*, 373 F.2d 616 (10th Cir.), *cert. denied*, 389 U.S. 834, 88 S.Ct. 38, 19 L.Ed.2d 94 (1967), the court noted:

Appellant's comparison of the language used in § 2055 of the 1954 Code with that in § 642 does not provide a sound basis for deciding the application of § 2055 to the facts before us. The sections are unrelated and the provisions of one or even the policy expressed in one cannot be carried over to the other.

*Id.* at 619.

More convincingly, however, Congress has specifically addressed the disallowance of double deductions and has not disallowed the one sought by the Estate. In § 642(g) Congress provided as follows:

Disallowance of Double Deductions.— Amounts allowable under Section 2053 [estate tax deduction for expenses, indebtedness or taxes] or 2054 [estate tax deduction for losses] as a deduction in computing the taxable estate of a decedent shall not be allowed as a deduction....

If Congress had intended to disallow a deduction under § 2055 it could have and would have included that section in § 642(g). In the face of clear Congressional intent not to disallow double deductions under Section 2055 and the income provisions of the Code, the Court will not infer one. As the court noted in *Commerce Trust Co. v. U.S.*, 309 F.Supp. 1317 (W.D. Mo.1969), *Aff'd.* 438 F.2d 111 (8th Cir.1971):

[I]f the Congress had intended to wipe out all double tax benefits it could have found appropriate language to accomplish that objective. The legislative history of Section 642(g) ... does not indi-

cate that the Congress was seeking to find such language.

309 F.Supp. at 1321.

## CONCLUSION

The statute quite clearly and simply creates a loophole by which income accumulated by the Estate and distributed to a charity is never taxed, when the same distribution qualifies for an estate tax deduction. Treas.Reg. § 1.663(a)–2 is an attempt by the IRS to close this loophole. It is up to Congress, however, and not the IRS or this Court to close this loophole. As noted by the court in *Evans v. Dudley*, 188 F.Supp. 9 (W.D.Penn.1960):

The government inferentially is suggesting that this court is empowered to legislate on what appears to be a loophole in the law permitting a double deduction. Such power rests with Congress and not the courts....

General equitable considerations do not control the measure of deductions or tax benefits. It is as applicable to the government as the taxpayer. Congress may be strict or lavish in its allowance of deductions or tax benefits. The formula it writes may be arbitrary and harsh in its applications. But, where the benefit claimed by the taxpayer is fairly within the statutory language and the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall. It is clear that a court cannot impose equitable considerations in controlling the measure of deductions or tax benefits. The Court is not empowered to legislate or impose restrictive conditions which are not present in the law.

. . . . .

While an intention to allow one expenditure to be deducted twice under a single statutory provision will not be imputed to Congress, a double tax benefit is obtainable from a single cash outlay under different sections of the law unless Con-

gress has indicated that one or the other shall be inapplicable.

*Id.* at 12–13 (citations omitted).

On the basis of the record before this Court, it is clear that the distributions at issue were of income and did not exceed the Estate's Distributable Net Income, and in all respects qualified as a deduction under § 661(a)–2. There being no genuine issues of material fact, the Plaintiffs are entitled to a summary judgment entitling them to a Section 661(a)(2) deduction for $1,281,596.72 and a refund of that amount plus interest. A separate judgment will be entered to this effect.